WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joe Hand Promotions Incorporated, | No. CV-24-00993-PHX-ROS |
| Plaintiff, | **ORDER** |
| v. | |
| Taco Spot III LLC, et al., | |
| Defendants. | |

Plaintiff filed a Motion for Default Judgment (Doc. 21) against Defendants Taco Spot III LLC and Jorge Ruiz. No response to the Motion has been filed. For the reasons set forth below, the Court will grant the Motion.

**BACKGROUND**

Because the Clerk entered default, the Court will take the Complaint's factual allegations as true. *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (stating that upon default, a complaint's allegations are taken as true, except those relating to damages).

On May 1, 2024, Plaintiff filed this action alleging Defendants violated two provisions of the Communications Act of 1934, 47 U.S.C. §§ 553 and 605. (Doc. 1 ¶ 1). Defendants are the owners and operators of The Taco Spot, a commercial establishment in Mesa, Arizona. (*Id.* ¶¶ 4-5). Plaintiff alleges it held the exclusive right to license the exhibition of *Canelo Álvarez vs. John Ryder* on May 6, 2023 (the "Program"). (*Id.* ¶ 3). Plaintiff alleges Defendants broadcasted the Program to its patrons without authorization

and without paying the sublicense fee to Plaintiff.  (*Id.* ¶ 10).  Plaintiff further alleges it hired an auditor, Sarah Jennings, to investigate whether The Taco Spot was publicly exhibiting the Program without proper authorization. (Doc. 21-1 at 4).  On May 6, 2023, Ms. Jennings went to The Taco Spot and observed that the Program was broadcasted on two televisions to approximately 15 patrons.  (*Id.* at 4-5).

Plaintiff asserts Defendants publicly displayed the Program at The Taco Spot without authorization by means of unlawfully intercepting or receiving a satellite or cable signal.  Plaintiff served Defendant Taco Spot III LLC on August 22, 2024 (Doc. 12) and Defendant Jorge Ruiz on October 19, 2024 (Doc. 17).  Defendants failed to appear in the action, and Plaintiff filed an Application for Entry of Default on November 26, 2024 (Doc. 18).  The Clerk filed the Entry of Default on November 27, 2024, and the Plaintiff filed its present Motion for Default Judgment pursuant to Fed. Riv. Civ. P. 55(b)(2) on February 4, 2025.

**JURISDICTION**

When a party seeks default judgment "against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Because Plaintiff's Complaint invokes a federal cause of action under the Communications Act of 1934, the Court has subject matter jurisdiction over the action.  *See* 28 U.S.C. § 1331.  The Court also has personal jurisdiction over Defendants.  Plaintiff's claims arise from Defendants' activities in Arizona and their alleged failure to comply with federal communications laws during those activities. (*See* Doc. 1 at ¶¶ 1-2).

**DEFAULT JUDGMENT**

Once default is entered, the Court may enter default judgment under Rule 55(b). Deciding to grant default judgment is discretionary and the Court must consider: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the amount in controversy; (5) the possibility of factual dispute; (6) whether the default was due to excusable neglect; and (7) the strong preference

to decide cases on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986).

## I. Factor (1): Prejudice to Plaintiff

Because Defendants have failed to litigate this action, Plaintiff will be left with no alternative recourse and would thus suffer prejudice without default judgment. This factor thus weighs in favor of default judgment. *See Zekelman Indus. Inc. v. Marker*, 2020 WL 1495210, *3 (D. Ariz. Mar. 27, 2020).

## II. Factors (2) and (3): Merits of the Claim and Sufficiency of the Complaint

The second and third *Eitel* factors, taken together, require courts to consider whether a plaintiff has stated a claim on which relief may be granted. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002); *Danning v. Lavine*, 572 F.2d 1386, 1388–89 (9th Cir. 1978). Here, the Complaint's factual allegations are taken as true, but the plaintiff must establish all damages sought. *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977).

Plaintiff pled alternative liability claims under both 47 U.S.C. § 605 and 47 U.S.C. § 553, but only seeks relief under § 605. (Docs. 1 at 7; 21-1 at 6). "Both sections prohibit the unauthorized interception and reception of transmissions, but § 553 applies to cable television transmissions and § 605 applies to interstate radio communications, including satellite television signals." *Joe Hand Promotions Inc. v. Sand B. Enterprises LLC*, 2024 WL 4769777, at *3 (D. Ariz. Nov. 13, 2024). "A plaintiff may recover under only one statute for a single act of interception." *Id.* (citing *G & G Closed Cir. Events, LLC v. Macias*, 2021 WL 2037955, at *3 (N.D. Cal. May 21, 2021)). Because Plaintiff only seeks damages under § 605, the Court will analyze the merits of Plaintiff's § 605 claim.

Section 605(a) "prohibits commercial establishments from intercepting and broadcasting to its patrons satellite cable programming." *Kingvision Pay–Per–View v. Guzman*, 2009 WL 1475722, at *2 (N.D. Cal. May 27, 2009). "To be held liable for a violation of § 605, Plaintiff must plead Defendants were (1) not authorized by the sender, (2) intercepted a radio communication, and (3) divulged or published the protected communication to any person." *G & G Closed Cir. Events, LLC v. Ayala*, 2023 WL

4269637, at *3 (D. Ariz. June 29, 2023) (citing 47 U.S.C. § 605(a); *Nat'l Subscription Television v. S & H TV*, 644 F.2d 820, 826 (9th Cir. 1981)).

Plaintiff alleges it possessed exclusive rights to distribute and authorize the public display of the Program. (Doc. 1 ¶ 8). The Program was nationally televised on May 6, 2023, and Plaintiff alleges it did not authorize Defendants to broadcast the Program to its patrons. (*Id.* ¶¶ 3, 16). Plaintiff alleges "Defendants' unauthorized exhibition of the Program was accomplished through the interception and/or receipt of a satellite signal" or through a cable signal. (*Id.* ¶ 20). Plaintiff also alleges "Defendants willfully engaged in wrongful acts to intercept and/or receive the Program for free or at a nominal cost or assisted in such actions, while Plaintiff's legitimate customers paid substantially more for the proper commercial sublicense." (*Id.* ¶ 13). The interception and publication of the Program was "for purposes of commercial advantage or private financial gain." (*Id.* ¶ 20). Further, Plaintiff alleges Defendants advertised the Program on social media. (*Id.* ¶ 14; *see also* Doc. 21-6 at 1, Ex. C (screenshot exhibits supporting the allegations)). Plaintiff supports its allegations with a sworn piracy affidavit of Investigator Sarah Jennings, who was present at The Taco Spot in Mesa, Arizona on May 6, 2023, and witnessed the Program being displayed to patrons on two televisions. (Doc. 21-5 at 1-2).

Taking the above allegations as true, Plaintiff has sufficiently pled a claim under 47 U.S.C. § 605(a). The second and third *Eitel* factors thus weigh in favor of default judgment.

### III.   Factor (4): Amount in Controversy

This factor requires the court to consider the amount of damages at stake in relation to the seriousness of Defendant's conduct. *PepsiCo*, 238 F. Supp. 2d at 1176. Plaintiff seeks $7,350.00 in statutory damages. This is reasonable and proportional to Defendants' violation of federal law, and it is within the limits of Section 605's statutory guidance. This factor supports entering default judgment.

### IV.   Factor (5): Dispute Over Material Facts

No dispute of material facts prevents granting Plaintiff's Motion given the sufficiency of Plaintiff's complaint and Defendants' failure to participate in the case. *See*

*PepsiCo*, 238 F. Supp. 2d at 1177.  This factor supports entering default judgment.

## V. Factor (6): Excusable Neglect

Plaintiff executed proper service against all Defendants in this action.  (Docs. 12, 16).  There is no evidence suggesting Defendants' failure to respond is due to excusable neglect.  This factor also supports entering default judgment.

## VI. Factor (7): Policy Favoring Judgment on the Merits

The final *Eitel* factor generally weighs against default judgment.  *See Zekelman Indus. Inc.*, 2020 WL 1495210, at *4.  It stems from "the general rule that default judgments are ordinarily disfavored" and "[c]ases should be decided upon their merits whenever reasonably possible."  *Eitel*, 782 F.2d at 1472 (citing *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985)).  However, "the mere existence of Fed. R. Civ. P. 55(b) indicates that 'this preference, standing alone, is not dipositive.'"  *PepsiCo*, 238 F. Supp. 2d at 1177 (quoting *Kloepping v. Fireman's Fund*, 1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996).  Because Defendants have failed to plead or otherwise defend this action, the Court is unable to reach the merits of this case.  Therefore, this final factor weighs against granting default judgment.

## DAMAGES

Plaintiff seeks statutory damages in the amount of $2,100.00 for the violation of Section 605(e)(3)(C)(i)(II) and enhanced damages in the amount of $5,250.00 under Section 605(e)(3)(C)(ii) because the violation was willful.  (Doc. 21-1 at 15).

## I. Statutory Damages

Statutory damages are proper when actual damages cannot be easily proven.  *J & J Sports Prods., Inc. v. Rubio*, 2013 WL 950031, at *1 (D. Ariz. Mar. 11, 2013).  Under 47 U.S.C. § 605, an aggrieved party "may recover an award of statutory damages ... in a sum of not less than $1,000 or more than $10,000, as the court considers just."  47 U.S.C. § 605(e)(3)(C)(i)(II).  An appropriate award of statutory damages "deters but does not destroy" the business.  *Kingvision Pay—Per—View v. Lake Alice Bar*, 168 F.3d 347, 360 (9th Cir. 2009).

Plaintiff requests $2,100.00 in statutory damages, double the amount it would have cost Defendants to obtain a sublicense from Plaintiff to broadcast the Program. (Doc. 21-4). Plaintiff asserts "awarding substantial statutory damages in this case serves to fully compensate the Plaintiff for its damages, deters future piracy, admonishes Defendants for ignoring this litigation, and encourages future Defendants to participate in the litigation." (Doc. 21-1 at 10). The Court agrees an award of $2,100.00 in statutory damages is appropriate to deter future violations and compensate Plaintiff for its loss.

## II. Enhanced Damages

If the violation was committed willfully and for commercial gain, Section 605(e)(3)(C)(ii) provides this Court discretion to "increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation." The Supreme Court has defined "willful" as "marked by careless disregard for whether or not one has the right so to act." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126-27 (1985). Some courts have found the mere unauthorized showing of a program sufficient to award enhanced damages because of the unlikelihood it was accidental and not done for profit. *See Entertainment By J & J, Inc. v. Al–Waha Enter., Inc.*, 219 F.Supp.2d 769, 776 (S.D. Tex. 2002); *see also Joe Hand Promotions, Inc. v. Benitez*, 2020 WL 5519200, at *6 (E.D.N.Y. Aug. 27, 2020) ("Willfulness can be established merely by the broadcast of an event without authorization."), *report and recommendation adopted*, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020).

Plaintiff requests $5,250.00 in enhanced damages, equal to 2.5 times the statutory damages above. Defendants advertised the Program on social media, did not pay a sublicense fee or otherwise obtain permission from Plaintiff to broadcast the Program, and profited from the free distribution of the Program to their paying patrons. This is clear evidence of willfulness. The Court finds an award of $5,250.00 in enhanced damages will fairly achieve the statutory goals of restitution and deterrence.

In sum, the Court finds Plaintiff is entitled to entry of default judgment against Defendants. The Court will award $2,100.00 in statutory damages, and $5,250.00 in

enhanced damages, for a total of $7,350.00. Plaintiff may file a motion for attorneys' fees and costs, at which juncture the Court may award Plaintiff its requested costs. *See* Fed. R. Civ. P. 54(d)(2).

Accordingly,

**IT IS ORDERED** Plaintiff's Motion for Default Judgment (Doc. 21) is **GRANTED**. The Clerk of Court shall enter default judgment in favor of Plaintiff and against Defendants Taco Spot III LLC and Jorge Ruiz in the amount of $7,350.00 in damages. This amount shall be subject to post-judgment interest at the applicable federal rate pursuant to 28 U.S.C. § 1961(a).

**IT IS FURTHER ORDERED** Plaintiff may file a motion for costs and attorneys' fees in accordance with LRCiv 54.2 within **fourteen (14) days** of the entry of this Order.

Dated this 9th day of April, 2025.

Honorable Roslyn O. Silver
Senior United States District Judge